**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**JOSEPH JUNIOR CRANFORD** **PLAINTIFF**

**VS.** **No. 4:26-cv-00110 BSM/PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration** **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Joseph Junior Cranford ("Cranford") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to deny his claim for Supplemental Security Income ("SSI"). Cranford contends

the Administrative Law Judge ("ALJ") erred in three ways: (1) in evaluating Cranford's subjective allegations; (2) in imposing a residual functional capacity ("RFC") that was not supported by substantial evidence; and (3) in reaching a Step Five determination that was not supported by substantial evidence.

The parties ably summarized the medical records and the testimony given at the administrative hearing conducted on December 10, 2024. The Court has carefully reviewed the record to determine whether there is substantial evidence to support Bisignano's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from October 6, 2022, the date on which the application was filed, through the date of the ALJ's decision, January 7, 2025.

Finding no reversible error occurred, the undersigned recommends the complaint be dismissed.

*The Administrative Hearing:*

Responding to questions posed by the ALJ, Cranford stated that he was 52, had a GED, and previously had a commercial driving license ("CDL"), which was last valid in 2012. Cranford stated he last worked in 2007 or 2008.

Cranford described sciatic nerve pain as a problem preventing him from working. He stated he had not undergone surgery, ablations, or injections but had done everything the pain doctor had directed. He also described spine pain, for which he had received steroid injections. The injections "didn't do nothing. . . I'm

in pain." (Tr. 47). Cranford also said he continued to experience boils every time he sweats. He was prescribed pills for this condition, and the boils were lanced if necessary. He estimated he dealt with this 5-6 times a year, even if he tried to avoid sweating. His physician mentioned surgery in the future. Cranford cited an earlier surgery which did not remedy his need for 5-10, or more, bowel movements daily.

When asked about his abilities, he stated every step hurt, and he could sit for only 5-10 minutes before needing to stretch and relax for 10 minutes. He stated he could not drive due to pain and nervousness about muscle spasms. Cranford said his wife, who works from home, does all the driving. He described his typical day as "mostly in bed," reading a bit, and soaking in the tub. (Tr. 51).

Questioned by his attorney, Cranford listed his daily prescriptions as Hydrocodone, Gabapentin, and a muscle relaxer, all of which caused him to sleep.

Lionel Bordelon ("Bordelon"), a vocational expert, testified. The ALJ asked Bordelon to consider a hypothetical worker of Cranford's age, education, and experience, who could perform light work with the following restrictions: no more than occasional stooping or crouching; and no more than occasional exposure to extreme heat or humidity. The vocational expert testified that such a worker would be able to perform the requirements of three representative occupations. However, a worker who was off-task more than 10% of the time, or who was

absent two or more days a month, would not be able to perform jobs in the national economy.

*The ALJ's Decision*

The ALJ determined Cranford had the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease with right-side radiculitis/sciatica, polyarthritis, hidradentis suppurativa/chronic skin rash, and irritable bowel syndrome with gastroesophageal reflux disease (GERD). The ALJ noted that Cranford had surgery in April 2023 for removal of a large urachal remnant and umbilical hernia repair. Since the follow up visit showed no significant problems, the ALJ found the urachal remnant and umbilical hernia, status-post repair surgery, to be a non-severe impairment.

The ALJ found Cranford did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, specifically addressing Listings 1.15, 1.18, 5.06, and 8.06.

The ALJ determined Cranford had the RFC to perform light work, except that he would be limited to occasional stooping or crouching and limited to occasional exposure to extreme heat or humidity. These restrictions mirrored those in the hypothetical question posed to Bordelon.

The ALJ determined Cranford's impairments could reasonably be expected

to cause his symptoms. However, the ALJ found his statements regarding the intensity, persistence and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 19).

The ALJ noted Cranford alleged disability as of April 10, 2020 due to arthritis, sciatic nerve problems, and a pinched nerve with low back pain, muscle spasms, and leg pain with burning and tingling. However, the ALJ found the first report of musculoskeletal problems was in July 2022 when Cranford was seen by his primary care physician. His physician diagnosed cervical disc degeneration with cervicalgia, right side sciatica, and paresthesia, and prescribed Cyclobenzaprine, Ibuprofen, Norco, Gabapentin, and occasional injections, and referred him to an orthopedist.

The ALJ detailed Cranford's treatment at OrthoArkansas, from July 26, 2022, through November 2022. Imaging was done, and Cranford was diagnosed with lumbar degenerative disc disease with right side radiculitis and low back pain. He continued to take the medications prescribed by his primary care physician and epidural injections were recommended and performed in October. The ALJ noted Cranford reported feeling better in November but chose not to continue with the recommended repeat injections.

Cranford was still taking Cyclobenzaprine, Ibuprofen, and Gabapentin when seen by his primary care physician in early December 2022, with no complaints of

musculoskeletal pain. Those complaints returned later in December and continued with regular treatment from March 2023 through September 2024.

Cranford also was treated by his primary care physician, a dermatologist, and the UAMS Hidradenitis Suppurative Clinic for boils/rash associated with sweating. This treatment started in April and May 2020, with concentrated treatment occurring in 2023. The ALJ noted the various prescriptions and procedures for this condition.

The ALJ also reviewed medical care for Cranford's stomach, GERD, diarrhea, abdominal pain, heartburn, and related issues. Treatment began in July 2022, and included care from his primary care physician, a urologist, and Dr. Kenneth Coggins ("Coggins"), a gastroenterologist.

The ALJ addressed the medical opinions of Dr. Prianka Gerrish, State agency consultant, finding her opinion that Cranford was suited for light work with restrictions "partially persuasive." (Tr. 23). At the reconsideration level, Dr. David Hicks opined Cranford could perform light work limited to occasionally stooping or crouching and avoiding even moderate exposure to extreme heat and/or humidity. Hicks' opinion was persuasive to the ALJ.

The ALJ found the "record does not support the claimant's allegation of disability." (Tr. 24). The ALJ recited numerous inconsistencies between Cranford's testimony and the medical records. Relying upon Bordelon's expert

testimony, the ALJ found Cranford able to perform jobs in the national economy. Accordingly, the ALJ found Cranford was not disabled. (Tr. 15-27).

*Claim One – the ALJ erred in evaluating Cranford's subjective allegations.*

Cranford correctly observes the ALJ cannot merely dismiss subjective allegations because they are not consistent with the objective medical evidence. The ALJ must consider other factors relevant to his symptoms. The relevant factors to be considered are found in SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p.

The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

Cranford argues the ALJ here "was required to consider the factors . . . but did not do so and focused only on whether those allegations were consistent with his medical records." Doc. No. 6, page 5. To be sure, the ALJ observed many instances where Cranford's subjective allegations were at odds with the objective medical evidence. For example, Cranford alleged disabling pain yet did not

continue with recommended injections for pain and ceased treatment with his orthopedist. The ALJ also observed "during 2023 and 2024, exams consistently showed gait was smooth and normal, posture was upright, and the claimant moved all extremities well. Exam of the back, pelvis, and bilateral upper and lower extremities was normal, except for some tenderness in the cervical and lumbar spine. The spine was stable, and range of motion in the spine was normal and without pain. Motor function was normal, strength was normal, reflexes were normal, and sensation was normal with no neurological deficits noted. Range of motion and strength in the upper and lower extremities was normal. There was no mention of an assistive device being used for ambulation, and progress notes from 2024 showed the claimant reported the medications decreased his pain with no adverse side effects. At one point, the claimant even reported he was exercising at the gym and lifting up to 25 pounds." (Tr. 24, citations omitted).

Contrary to Cranford's argument, these inconsistencies were not the sole basis for the ALJ's assessment of his subjective statements. In fact, Cranford concedes the ALJ considered "other evidence" apart from the medical records, such as his medications and his statement that he was exercising at the gym. Doc. No. 6, page 5. The ALJ also considered Cranford's varying statements about the side effects of his medications, and he addressed the daily activities Cranford listed

in his Function Report, which were at odds with his hearing testimony. As previously noted, the ALJ is not bound to discuss every relevant factor. *See Goff v. Barnhart*, *supra.* Here, the ALJ cited SSR 16-3p and properly considered the subjective statements of Cranford.

*Claim Two – the ALJ reached an RFC which was not supported by substantial evidence.*

Cranford faults the RFC reached by the ALJ (light work with a few restrictions) for several reasons.

First, he contends the ALJ failed to fully and fairly develop the record. The ALJ's duty is only to "develop a reasonably complete record." *See Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). The burden of proof falls on the claimant to prove disability. *See Thomas v. Sullivan*, 928 F.2d 255 (8th Cir. 1991). And the pertinent regulations provide that consultative examinations at government expense are discretionary and required only when necessary to enable the ALJ to make a disability determination. *See* 20 C.F.R. §§ 416.917, 416.919a(a). The specific argument in this regard is that there was no consultative examination which supported the ALJ's determination that Cranford could perform light work.

There is no error because the RFC need not mirror the findings of any one physician, or one consultative examiner, as the ALJ is not bound to choose any one

physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The ALJ's reasoning for his decision is understandable, and the basis for his decision is supported by the record.

Cranford also argues the RFC was erroneous because it did not adequately account for his back and spine problems and his irritable bowel syndrome. But this is a quarrel with the ALJ's evaluation of the evidence, including the subjective statements of Cranford. The undersigned has already found the treatment of the subjective statements proper.

Likewise, the ALJ properly analyzed Cranford's back and spine and irritable bowel syndrome. Cranford views his back and spine issues and irritable bowel syndrome as proven points, without any debate. But this is not the case. The ALJ weighed all the evidence and reached an ALJ determination which differed from the view of Cranford. The ALJ's decision was supported by substantial evidence. Even if Cranford's assessment was also backed by substantial evidence, the decision of the ALJ would be affirmed. This is so because "the court, however, does not 'reweigh the evidence presented to the ALJ,' *Baldwin,* 349 F.3d at 555

(citing *Bates v. Chater,* 54 F.3d 529, 532 (8th Cir.1995)), or 'review the factual record *de novo.' Roe v. Chater,* 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala,* 22 F.3d 186, 188 (8th Cir.1994)). Instead, if, after reviewing the evidence, the court finds it 'possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision.' *Id.* (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992), and citing *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989)); *accord Baldwin,* 349 F.3d at 555; *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000)." *Rittenhouse v. Astrue*, 767 F. Supp. 2d 985, 1000–01 (N.D. Iowa 2011).

The RFC was properly reached by the ALJ.

*Claim Three – the ALJ's Step Five determination was not supported by substantial evidence.*

There is no merit to this argument, which is simply another way of saying the RFC was erroneous. Cranford claims the hypothetical question posed to Bordelon was faulty because the RFC was erroneous. Having found the RFC supported by substantial evidence it follows that the hypothetical question utilizing the RFC was appropriate.

*Conclusion*

In summary, substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case

Therefore, it is recommended that the final decision of Bisignano be affirmed and Cranford's complaint be dismissed with prejudice.

IT IS SO ORDERED this 5th day of November, 2026.

UNITED STATES MAGISTRATE JUDGE